Antonio GASCAR, Appellant,

v.

**UNITED STATES of America,
Appellee.**

No. 20124.

United States Court of Appeals
Ninth Circuit

Dec. 28, 1965.

Rehearing Denied March 15, 1966.

John L. Cardoza, San Francisco, Cal.,
for appellant.

Moody Brockett, U. S. Atty., Donald
A. Douglas, Robert T. O'Leary, Asst.
U. S. Attys., Butte, Mont., for appellee.

Before MERRILL, KOELSCH and
BROWNING, Circuit Judges.

MERRILL, Circuit Judge:

This appeal presents the question
whether, during the course of a series of
narcotics transactions with undercover
agents of the United States, and prior to
arrest the criminal's right to counsel at-
taches.

In the District Court of Montana
appellant was convicted of six counts of
narcotics violations and has appealed
from the resulting judgment. These six
counts were based upon incidents oc-
curring October 4, December 1 and De-
cember 2, 1962, which may be sum-
marized as follows: On October 4, after
striking up an acquaintance with appel-
lant, a Government agent purchased 125
marijuana cigarettes from him. On De-
cember 1, 201 cigarettes were purchased
from appellant by two Government
agents. On December 2, following appel-
lant's arrest at his home, Government
agents elicited from him the fact that he
possessed marijuana and dilaudid. Ap-
pellant also stated where in his home
these narcotics were located and they
were thereupon seized. Testimony as to
incriminating statements made by appel-
lant on all three dates was received in
evidence as well as the marijuana and
dilaudid seized on December 2.

Appellant's position is that once the October 4 sale had been consummated and his guilt of narcotics violation thus established, the Government's relationship with him had passed from the investigatory to the accusatory stage and his right to the assistance of counsel had thereupon attached under Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).[1] He contends that incriminatory statements thereafter made by him and evidence secured as a result of such statements were inadmissible since he was, on those occasions, without assistance of counsel and had not waived his right to counsel.

In order to meet squarely the issue presented we assume, arguendo, that under the facts of this case proceedings upon the substantive violations of October 4 and December 1 had, when those sales were consummated, passed from the investigatory to the accusatory stage.[2]

█ It does not follow that the incriminating statements and evidence in question were thereby rendered inadmissible. They related to fresh criminal activity as to which the officers properly were pursuing investigation rather than to crimes of which appellant already stood "accused." Appellant cannot, by virtue of his status as an accused person, immunize himself from the consequences of further criminal acts simply because they were committed in the presence and with the cooperation of Government agents who then had sufficient information to accuse appellant of an earlier crime. As this court has already noted: "One is not entitled to counsel while committing his crime * * *." Grier v. U. S., 345 F.2d 523, 524 (9th Cir. 1965).

Appellant contends that, at the least, incriminating statements relating to past crimes of which he already stood accused should be rendered inadmissible under Massiah.[3] He refers us to one such statement. During the course of the December 1 transaction appellant had made reference to the October 4 transaction. In this respect the Government agent testified:

"I said to the defendant Gascar. 'I would like to see about getting a hold of some pot.' I said, 'Can you give me a better deal than what Marco has offered me before,' and he said, 'Well, what kind of deal do you want,' and I said, 'Like for $50,' and he said, 'No, man, I can't give you that kind of a deal.' He said, *'Last time I had a lot more pot on hand than I have now,'* and so I asked him, 'Well, what kind of deal can you give me.' He said, 'Well, I can let you have 200 for $125,' so I turned around to Agent Gooder, and I said, 'Do you want to go for that deal,' and he said, 'Yea, okay, we'll go for it.' So I then turned around to Gascar and said, 'Okay, we'll take the deal.'"

This oblique reference to a past crime was not made in response to governmental probing. It emerged spontane-

1. "We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer." Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758 (1964).

2. This assumption is a broad one. We recognize that in both Escobedo and Massiah other circumstances were of critical importance in both the reasoning and result of the Court. We do not intend by this decision to prejudge the impact of a lack of any of those circum-

stances. We simply discuss the case on the basis on which it was argued.

3. In Massiah, 377 U.S. 201, 207, 84 S.Ct. 1199, 1203, it was stated: "We do not question that in this case, as in many cases, it was entirely proper to continue an investigation of the suspected criminal activities of the defendant and his alleged confederates, even though the defendant had already been indicted. All that we hold is that the defendant's own incriminating statements, obtained by federal agents under the circumstances here disclosed, could not constitutionally be used by the prosecution as evidence against *him* at his trial."

ously, naturally and gratuitously as a part of the bargaining process incidental to a new criminal transaction. The investigation was not in any sense of the term a process of interrogation. In this respect the "investigation" in Massiah is clearly distinguishable.

Judgment affirmed.