535 P.2d 1084

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Paul Bik HOGERVORST, Jr., Defendant-Appellant.**

**No. 1660.**

Court of Appeals of New Mexico.

March 12, 1975.

Certiorari Granted April 3, 1975.

Ray Shollenbarger, Jr., Thomas L. Grisham, McCulloch, Grisham & Lawless, Albuquerque, for appellant.

Toney Anaya, Atty. Gen., Thomas Patrick Whelan, Asst. Atty. Gen., Santa Fe, for appellee.

OPINION

WOOD, Chief Judge.

Convicted of bribery of a public official, defendant appeals. Section 40A–24–1, N. M.S.A.1953 (2d Repl.Vol. 6). We reverse because of the failure to correct false evidence concerning the bribery of Las Cruces officials.

Two indictments charged defendant with a public nuisance in violating § 40A–8–1, N.M.S.A. 1953 (2d Repl.Vol. 6). The first indictment charged defendant with the display and the showing of the movie "Deep Throat". The second indictment charged defendant with maintaining and operating the Galaxy Book Store, referred to in the record as an "adult" book store. An order was issued for defendant to show cause why he should not be held in contempt for alleged disobedience of a subpoena to appear before the Grand Jury with "the full and complete film 'Deep Throat' . . ." There is substantial evidence that defendant paid $2,000 to District Attorney Williams in an effort to have the District Attorney drop the prosecution of these matters.

Autrey, an investigator for the District Attorney, was a witness at a pretrial hearing. At that hearing Autrey testified to conversations with defendant in which defendant referred to payoffs to the City Manager and Mayor of Las Cruces. The payoffs were for the purpose of allowing defendant to continue in his business. At trial this business was identified as a pornographic book store. Autrey testified that he suspected the payoff was a bribe. He also testified:

"Q. Did you later discover that the payments, the City of Las Cruces, were actually taxes being paid to the City of Las Cruces?

"A. Yes I did."

At trial, Autrey again testified to the conversation with defendant about payoffs in Las Cruces. The prosecutor then asked Autrey about details of the payoffs. An objection was sustained. Thereafter, both Autrey and the witness Moore testified that defendant indicated he could not secure help from city officials in connection with the indictments. District Attorney Williams testified to a conversation with defendant in which the District Attorney stated he did not know how to handle the city officials.

The only evidence in this record is that the payoffs in Las Cruces were in fact the payment of taxes, and this evidence came from the District Attorney's investigator. Yet, at trial, the reference to city officials in Las Cruces is in the context that they had been bribed. On this record this evidence was false.

State v. Morris, 69 N.M. 244, 365 P.2d 668 (1961) holds that the deliberate use of false evidence knowingly by a prosecuting officer in a criminal case constitutes a denial of due process of law if such evidence is material to the guilt or innocence of the accused. Here the evidence of alleged bribes was false. The State acknowledged the evidence was material in contending the evidence went to the defense of entrapment. It may be questioned whether the prosecutor knowingly or deliberately solicited this evidence because some of the testimony may fairly be read as nonresponsive to the questions asked. This, however, does not benefit the State. "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). See, Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

Defendant raises other issues concerning the denial of a fair trial. These issues are:

1. Testimony concerning alleged payoffs of certain persons in El Paso. The record is not as clear concerning the falsity of this testimony as it is concerning Las Cruces payoffs. The trial court consistently sustained objections to this testimony. State witnesses interjected this testimony in apparent disregard of the trial court's ruling.

2. When asked why he continued to investigate defendant after the defendant had been indicted, Autrey replied:

"The information that he had given me with regard to paying off other officials. The FBI was interested in the interstate transportation of pornographic material.

They were interested in the possibilities, I believe, is called white slavery, which is bringing women across the state line for purposes of Prostitution."

3. The alleged repeated and unnecessary references to pornography throughout the trial.

To decide these issues, we would have to consider various procedural matters relied on by the State. We do not decide them because the State's failure to correct false evidence requires a new trial. These issues, severally and cumulatively, raise serious questions which should be resolved at conference prior to trial. See State v. Rowell, 77 N.M. 124, 419 P.2d 966 (1966); State v. Vallejos, 86 N.M. 39, 519 P.2d 135 (Ct.App.1974); State v. Garcia, 83 N.M. 51, 487 P.2d 1356 (Ct.App.1971); State v. Alberts, 80 N.M. 472, 457 P.2d 991 (Ct.App. 1969).

The judgment and sentence are reversed. The cause is remanded with directions to grant defendant a new trial.

It is so ordered.

HERNANDEZ and LOPEZ, JJ., concur.