566 P.2d 828

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Paul Bik HOGERVORST, Jr.,
Defendant-Appellant.**

**No. 2750.**

Court of Appeals of New Mexico.

May 17, 1977.

Rehearing Denied May 31, 1977.

Writ of Certiorari Denied June 24, 1977.

Thomas L. Grisham, McCulloch, Grisham & Lawless, P. A., Albuquerque, for defendant-appellant.

John J. Duran, Paquin M. Terrazas, Asst. Attys. Gen., Toney Anaya, Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

In 1974 defendant was convicted of bribery of a public official. His crime was the payment of money to the district attorney with the intent to influence the district attorney in carrying out his duties. Section 40A–24–1(D), N.M.S.A.1953 (2d Repl.Vol. 6). In 1975 we reversed and directed a new trial. *State v. Hogervorst*, 87 N.M. 458, 535 P.2d 1084 (Ct.App.1975). Upon retrial in 1976, defendant was again convicted. This appeal involves the 1976 conviction. Issues listed in the docketing statement, but not briefed, are deemed abandoned. *State v. Vogenthaler*, 89 N.M. 150, 548 P.2d 112 (Ct.App.1976). His brief raises issues concerning: (1) the indictment; (2) double

jeopardy; (3) right to counsel; (4) entrapment; (5) intercepted communications; (6) the prosecutor as a defense witness; (7) evidence of prior wrongful acts; (8) defense cross-examination; (9) prosecutor misconduct; and (10) instructions. We affirm.

*Indictment*

Defendant moved to quash the indictment, contending that "members of the Grand Jury returning the indictment . . were witnesses against the Defendant."

The indictment charging bribery was filed September 7, 1973. The same grand jury had returned indictments charging defendant with two public nuisance offenses in violation of § 40A–8–1, N.M.S.A.1953 (2d Repl.Vol. 6). One public nuisance charge concerned the operations of the Galaxy Book Store. The other public nuisance charge concerned the showing of the movie, "Deep Throat". The two public nuisance indictments were filed August 10, 1973. In addition, on August 10, 1973, defendant was directed to show cause to the district court why he should not be held in contempt for his failure to obey a subpoena. See § 41–5–12, N.M.S.A.1953 (2d Repl.Vol. 6), the 1975 amendment not being applicable. The subpoena had directed defendant to bring the film "Deep Throat" before the grand jury.

Section 41–5–3(C), N.M.S.A.1953 (2d Repl.Vol. 6) authorizes a challenge to the validity of the grand jury on the basis that "a member of the grand jury returning the indictment was a witness against the person indicted."

Defendant contends the grand jurors were witnesses against him because the grand jury had returned two indictments against him prior to returning the bribery indictment, and had "witnessed" the actions of defendant which led to the contempt citation. Defendant asserts that a grand jury involved in these prior events could not be unbiased or impartial in considering the bribery charge and had become witnesses against defendant's character and conduct. On this basis, defendant asserts the trial court erred in refusing to quash the indictment.

Defendant's argument perverts the meaning of "witness" as used in the grand jury statutes. These statutes refer to the oath for a witness, the testimony of witnesses, the power to compel the attendance of witnesses. Sections 41–5–6, 41–5–11, 41–5–12, N.M.S.A.1953 (2d Repl.Vol. 6). As used in these statutes, including § 41–5–3(C), supra, witness means a person called to give evidence regarding matters under inquiry by the grand jury. See Webster's Third New International Dictionary (1966); Black's Law Dictionary (1951). The effect of § 41–5–3(C), supra, is to prohibit a grand juror from testifying before the grand jury of which he or she is a member. The trial court correctly denied the motion to quash the indictment.

*Double Jeopardy*

After reversal by this Court and the granting of a new trial, defendant moved for dismissal of the indictment on the ground that retrial would violate the constitutional provision against double jeopardy.

*State v. Sneed*, 78 N.M. 615, 435 P.2d 768 (1967) states:

"The constitutional protection against double jeopardy does not prevent a second trial for the same offense when the defendant himself, by an appeal, has invoked the action which resulted in the second trial."

Defendant asserts this rule does not apply to his case. He relies on a statement in *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). That statement is that the double jeopardy clause bars retrials where bad faith conduct by the prosecutor threatens the harassment of defendant by successive prosecutions so as to afford the prosecution a more favorable opportunity to convict.

We reversed defendant's first bribery conviction "because of the failure to correct false evidence concerning the bribery of Las Cruces officials." *State v. Hogervorst*, supra. Defendant asserts that it is evident from our ruling "that the prosecution's willful and deliberate actions in eliciting testi-

mony that was known to be false constitutes the same type of bad faith conduct that the Double Jeopardy Clause is designed to protect against . . . ." We disagree.

In *State v. Hogervorst,* supra, we stated: "It may be questioned whether the prosecutor knowingly or deliberately solicited this [false] evidence because some of the testimony may fairly be read as nonresponsive to the questions asked." We did not hold that the prosecutor in the first trial willfully or deliberately elicited false testimony, and did not hold that the prosecutor was guilty of bad faith conduct. The reversal was for failure to correct false evidence. Defendant does not, in this appeal, attempt to demonstrate bad faith conduct by the prosecutor in the first trial; he relies entirely on statements in our opinion in *State v. Hogervorst,* supra. The result is a failure to show bad faith conduct on the part of the prosecutor.

In addition, *State v. Hogervorst* states: "There is substantial evidence that defendant paid $2,000 to District Attorney Williams in an effort to have the District Attorney drop the prosecution" of the August 10, 1973 indictments and the contempt citation. There is no showing that the retrial afforded the prosecution a more favorable opportunity to convict.

*United States v. Dinitz,* supra, is not applicable; the trial court did not err in refusing to dismiss the indictment on grounds of double jeopardy.

*Right to Counsel*

The public nuisance indictments were filed August 10, 1973. A civil suit seeking to close down defendant's "business" activities was filed on August 21, 1973. The bribery indictment charged that the offense was committed on August 24, 1973.

Between August 10th and August 24, 1973, investigators from the district attorney's office met with defendant in a continuing investigation of defendant. During these meetings, defendant made statements which were used against him in the bribery prosecution. And, defendant met with the

district attorney on August 24, 1973, the meeting where he produced the bribery money.

Defendant had retained counsel in connection with the public nuisance indictments and in connection with the civil suit. The district attorney knew that defendant was represented by counsel. Yet, defendant did not have counsel present during the meetings with the investigators or the district attorney, nor was he advised of his right to counsel.

Defendant asserts that damaging admissions were intentionally solicited by representatives of the State subsequent to the public nuisance indictments, that these admissions were obtained at a time when he was entitled to the assistance of counsel, that the admissions were obtained in violation of his right to counsel and, because of this violation, the admissions should have been suppressed.

*Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) held that defendant's statements obtained surreptitiously by federal agents, after indictment and in the absence of defendant's counsel, could not be admitted against defendant in the trial of the charge for which he had been indicted. *United States v. Anderson,* 523 F.2d 1192 (5th Cir. 1975) is to the same effect. Both decisions deal with evidence surreptitiously obtained by the government subsequent to indictment in the absence of the defendant's counsel. Both are distinguishable on the facts. We are not concerned here with evidence obtained by the State subsequent to the public nuisance indictments which was used at trial of the public nuisance charges. The evidence obtained by the State in this case was used at the trial of the separate bribery charge.

We are uncertain as to the meaning to be given to *People v. Vella,* 21 N.Y.2d 249, 287 N.Y.S.2d 369, 234 N.E.2d 422 (1967). The facts given are sparse and no reasoning is given for the conclusion reached. We recognize that *Vella* may be viewed as supporting defendant's contention. We disagree with such a view.

■ The issue here involves the right to counsel. It is clear that the right to counsel exists after judicial proceedings have been initiated against an accused, whether by way of formal charge, preliminary hearing, indictment, information or arraignment. *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). No judicial proceedings had been initiated against defendant in connection with the bribery charge at the time of the meetings between defendant and representatives of the State. *United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) states the right to counsel is determined by an "examination of the event in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary." Here there was no adversary; all that was involved was an investigation.

Defendant's contention is similar to that raised in *State v. Anaya*, 81 N.M. 52, 462 P.2d 637 (Ct.App.1969) which involved two unlawful sales of heroin purchased by an informer while being observed by a police officer. Anaya contended that once an investigation reaches an accusatory stage, the defendant must be advised of his right to remain silent and the right to counsel. Anaya claimed the accusatory stage was reached once the police began a concerted effort to obtain incriminating evidence against him. Anaya claimed the accusatory stage had been reached in his case once the informer set up the heroin purchase and, at that point, he was entitled to be advised of his rights. We disagreed, pointing out that the adversary system had not begun to work against Anaya at the time he sold the heroin. See also *State v. Maes*, 81 N.M. 550, 469 P.2d 529 (Ct.App.1970).

■ The representatives of the State were investigating fresh criminal activity. Defendant "cannot, by virtue of his status as an accused person, immunize himself from the consequences of further criminal acts simply because they were committed in the presence and with the cooperation of Government agents . . . ." *Gascar v. United States*, 356 F.2d 101 (9th Cir. 1965).

■ There was no violation of the right to counsel because defendant had no right to counsel while committing the crime of bribery. *Gascar v. United States*, supra.

### Entrapment

■ Related to the right to counsel claim is defendant's contention that the trial court should not have submitted the issue of entrapment to the jury, but should have ruled there was entrapment as a matter of law. The focal issue in entrapment is the intent or predisposition of the defendant to commit the crime. In determining whether entrapment has occurred, a line must be drawn between a trap for the unwary innocent and a trap for the unwary criminal. *State v. Fiechter*, 89 N.M. 74, 547 P.2d 557 (1976).

■ There is evidence that defendant suggested the bribe to one of the district attorney's investigators. There is evidence that defendant assured the district attorney that paying the money was defendant's idea. With this evidence, defendant cannot be characterized as an unwary innocent. The trial court did not err in submitting the issue of entrapment to the jury and in refusing to hold entrapment existed as a matter of law.

### Intercepted Communications

There was eavesdropping on two of defendant's meetings with representatives of the State. The conversation between defendant and investigator Autrey on August 23, 1973 was transmitted by a device concealed on Autrey and overheard by a person in a car parked nearby. The conversation between defendant and the district attorney on August 24, 1973 was transmitted by a device concealed on the district attorney and overheard by Autrey, who was sitting in a car parked nearby. Statements made by defendant in these "overheard" conversations were admitted into evidence over defendant's objection. Defendant claims his statements should have been suppressed. His suppression claim is based on two grounds—a statute and the constitutional prohibition against unlawful searches.

■ The statutory claim is based on §§ 40A–12–1 through 40A–12–1.10, N.M.S. A.1953 (2d Repl.Vol. 6, Supp.1975). These provisions pertain to interference with communications. They authorize interference with communications under court order. There was no court order in this case. Section 40A–12–1.7, supra, states that the contents of an intercepted communication is not to be received in evidence unless the parties are provided with a copy of the court's authorization order ten days prior to the trial. From this, defendant argues that no intercepted communication is admissible as evidence unless there is a court order authorizing the interception. Defendant reads the statute too broadly.

Section 40A–12–1, supra, defines the petty misdemeanor of "interference with communications". The definition of nearest applicability in this case is § 40A–12–1(C), supra, which states: "reading, hearing, interrupting, taking or copying any message, communication or report intended for another by telegraph or telephone without his consent." Section 40A–12–1, supra, goes on to state that the interference which has been made criminal, will not be criminal if the interference is authorized by court order.

By its terms, § 40A–12–1(C), supra, pertains to telephone conversations or telegraph messages. Neither are involved in this case; the overheard communication here was a face-to-face conversation transmitted to a listener by a device concealed on one of the participants in the conversation. This overhearing is not made criminal by § 40A–12–1, supra; the court order method of avoiding criminal conduct is not applicable. Because the court order method is not applicable, the provisions in § 40A–12–1.7, supra, regulating admissibility of court order authorized evidence is also not applicable.

■ The unlawful search issue involves defendant's expectation of privacy which the Fourth Amendment to the United States Constitution protects in the absence of a search warrant. *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), reh. denied, 402 U.S. 990, 91 S.Ct. 1643, 29 L.Ed.2d 156 (1971), points out that a police agent who conceals his police connections may write down his conversations with a defendant and testify concerning them without violating the Fourth Amendment. The plurality opinion in *White*, supra, holds that for constitutional purposes no different result is required if, instead of reporting and transcribing his conversations, the agent either: (a) simultaneously records the conversations with electronic equipment carried on his person, or (b) carries equipment which transmits the conversations either to recording equipment located elsewhere or to agents monitoring the transmission. There was no unlawful search.

The trial court did not err in admitting testimony concerning the overheard conversations.

*Prosecutor as a Defense Witness*

The prosecutor is not District Attorney Williams; he removed himself from the case because he would necessarily be a witness for the prosecution. District Attorney Brandenburg was the prosecutor; he conducted both trials on behalf of the State. Defendant claims the trial court denied him his constitutional right to call witnesses when it refused the defense request to call Brandenburg as a witness in the second trial. See N.M.Const., Art. II, § 14.

■ Our mandate reversing the first conviction and awarding a new trial was filed in the district court May 27, 1975. The district court file shows the case was set for trial numerous times in 1975, and in the spring and summer of 1976. Each setting was vacated. On July 21, 1976 notice was given that the case was set for trial on September 14, 1976. The trial did begin on September 14, 1976.

On August 11, 1976 defendant filed a motion requesting that Brandenburg be removed as prosecutor because the defense intended to call Brandenburg as a defense witness. This motion was heard on August 30, 1976 and denied as untimely. See

R.Crim.P. 33(f). At the time this motion was filed, more than a year had elapsed since the first trial setting after remand. The trial court did not err in overruling the motion.

On September 10, 1976 Brandenburg was served with a subpoena to testify as a witness. When the case was called for trial on September 14, 1976, defendant objected to Brandenburg prosecuting the case, stating that he had subpoenaed Brandenburg and planned to call him as a witness. Although the subpoena does not state that Brandenburg was to testify on behalf of the defense, no issue was raised concerning a defective subpoena. Instead, the trial court inquired as to the nature of the testimony which the defense desired to elicit from Brandenburg. After hearing defendant's response, the trial court denied the motion on the basis that the testimony would be irrelevant.

After the case-in-chief for the prosecution was concluded and the testimony of the first defense witness had been concluded, the defense informed the trial court that it intended to call Brandenburg as a witness and wished to go over with the court, outside of the jury's presence, the questions to be asked. This was done. The trial court again concluded that the questions were irrelevant and refused to permit the defense to call Brandenburg as a witness.

The trial court did not err in proceeding as it did or in not permitting defendant to call Brandenburg as a witness. There was no violation of defendant's constitutional right to call witnesses on his behalf. In so holding, we express no view as to whether the trial court could have properly denied the last two motions, as it did the first motion, on the basis that they were not timely. That issue is not presented.

■ Brandenburg's position as the prosecutor did not immunize him from being called as a witness. See *Beall v. Territory*, 1 N.M. (Gild.) 507 (1871), reversed on other grounds, 83 U.S. 535, 16 Wall. 535, 21 L.Ed. 292 (1873). Nevertheless, a trial court has discretion respecting the examination of witnesses and, in appropriate circumstances, may refuse to allow a witness to take the stand. Courts are reluctant to allow attorneys to be called as witnesses in trials in which they are advocates. When a trial court refuses to allow a prosecutor to be called as a witness for the defense, the appellate issue is whether the trial court abused its discretion. *Gajewski v. United States*, 321 F.2d 261 (8th Cir. 1963). See *United States v. Phillips*, 519 F.2d 48 (5th Cir. 1975); *Hayes v. United States*, 329 F.2d 209 (8th Cir. 1964); Annot., 54 A.L.R.3d 100 at 158.

■ In determining whether to allow the defense to call Brandenburg as a witness, the trial court properly required the defense to indicate in advance the testimony he desired to elicit from Brandenburg. *Gajewski v. United States, supra; State v. Stiltner*, 61 Wash.2d 102, 377 P.2d 252 (1962), cert. denied, 380 U.S. 924, 85 S.Ct. 928, 13 L.Ed.2d 810, (1965). See Evidence Rule 103.

Defendant informed the trial court that he intended to ask Brandenburg the following questions:

1. "[I]sn't it true that the last trial of this case was reversed because of knowing use of false evidence by the prosecution[?]"
2. "Did you discuss with prosecution witnesses prior to the last trial their testimony?"
3. "Whether Mr. Brandenberg [sic] advised the witnesses to testify as they did at the trial, or whether it was their own idea[?]"
4. "Isn't it true that you failed to correct the false testimony at the last trial?"

Defendant asserts that these questions would tend to impeach the credibility of the State's witnesses, tended to show a lack of criminal intent on the part of defendant, and also went to the defense of entrapment. They do not. All of the questions are directed to the conduct of Brandenburg as prosecutor. None of the questions tended to make the existence of a fact, that was of consequence to the determination of the

bribery charge, more probable or less probable than it would be without the questions being asked. Evidence Rule 401. Brandenburg's testimony concerning Brandenburg's conduct would not have impeached State witnesses, would not have shown a lack of criminal intent on defendant's part, or tended to establish entrapment.

The trial court did not abuse its discretion in refusing to permit the defense to call Brandenburg as a witness.

## Evidence of Prior Wrongful Acts

■ The public nuisance indictments were admitted as exhibits, as was the contempt citation. In addition, evidence was admitted, over defendant's objection, that the district attorney was investigating defendant's adult bookstore and adult theater. Defendant objected to these references, claiming they were prejudicial. Defendant recognizes that this evidence was admissible under Evidence Rule 404(b) to show his motive in offering money to the district attorney.

The claim on appeal is that the probative value of the above evidence was substantially outweighed by the danger of unfair prejudice and should have been excluded under Evidence Rule 403.

No claim concerning Evidence Rule 403, or that the prejudicial effect of the evidence outweighed its probative value, was raised in the trial court. Thus, the claim is not properly before us for review. N.M. Crim.App. 308; *State v. Smith,* 89 N.M. 777, 558 P.2d 46 (Ct.App.1976), overruled on other grounds, 89 N.M. 770, 558 P.2d 39 (1976). See also *State v. Baca,* 89 N.M. 204, 549 P.2d 282 (1976).

■ Defendant's claim that the evidence was prejudicial did not alert the trial court to a question concerning Evidence Rule 403. The fact that competent evidence may tend to prejudice defendant is not grounds for exclusion of that evidence. See *State v. Waller,* 80 N.M. 380, 456 P.2d 213 (Ct.App.1969). The question is whether the probative value of the evidence was outweighed by its prejudicial effect. That question was never raised in the trial court.

■ On the merits, the references to adult bookstore and to adult theater were not so cumulative that we can say, as a matter of law, that the prejudicial effect outweighed the probative value of the evidence.

Other claims under this point ignore what happened at trial. Defendant asserts he was accused of contempt of court; the transcript shows the reference was to the contempt citation. Defendant contends that he was accused of "vice" and "organized crime". These references were made in a long, unresponsive answer to a question asked by the defendant. Defendant asked that the answer be stricken because not responsive. The trial court granted the motion and instructed the jury to disregard the answer. These contentions simply do not pertain to Evidence Rule 403.

## Defense Cross-Examination

■ Defendant asserts the trial court limited his right to cross-examine witnesses. The claim is frivolous. The transcript does not show that defendant was limited either in the time spent in cross-examination or in questioning concerning matters relevant to the case.

Defendant's contention of a limited cross-examination is not developed in his brief. He contents himself with transcript references which he claims shows an improper limitation. An examination of those references shows these "limitations" were to the form of the questions asked, to matters involving legal conclusions, to matters not within the knowledge of the witness, to irrelevant questions, and to the characterization of one witness by another. One of defendant's transcript references is to an objection by the prosecutor which was overruled. These matters concerning the propriety of the questions asked were within the trial court's discretionary control. See *State v. Marquez,* 87 N.M. 57, 529 P.2d 283 (Ct.App.1974); *State v. Mireles,* 84 N.M. 146, 500 P.2d 431 (Ct.App.1972). No abuse of discretion is shown and there is nothing indicating an improper limitation of cross-examination.

Defendant also claims the trial court refused to allow defendant to cross-examine a witness concerning testimony given at defendant's first trial. Again, the claim is frivolous. The transcript references on which defendant relies go to objections which were sustained because of the form of the question asked or because the question was irrelevant. These references do not show that defendant was kept from cross-examining a witness concerning prior testimony.

## Prosecutor Misconduct

Defendant contends that prosecutor Brandenburg was allowed to cross-examine a witness recklessly with the purpose of eliciting hearsay testimony, of violating the attorney-client privilege, of introducing totally irrelevant evidence, and of denying defendant a fair trial. The witness was a polygraph examiner called by the defense.

■ The transcript references on which defendant relies do not support the contention made. What the references show are questions emphasizing the information made available to the examiner in preparing for and conducting the examination. The examiner established the relevancy of the questions when he testified that a thorough knowledge of the background and issues aided him in conducting the examination. Information sought by the prosecutor's questions was the facts before the examiner which he could have considered in arriving at his opinion. *State v. Turner,* 81 N.M. 450, 468 P.2d 421 (Ct.App.1970). This information was not elicited for its truth, and was not hearsay. Evidence Rule 801(c).

■ The attorney-client privilege claim is based on the showing that the information made available to the examiner was supplied either by defendant or defendant's attorney. Assuming (but not deciding) that the information was a confidential communication when made, and within the privilege established by Evidence Rule 503, the privilege was waived when the examiner was called to the witness stand by defendant and testified to an opinion which utilized the information supplied. See *Evidence Rules* 511, 703 and 705.

The prosecutor's cross-examination of defendant's polygraph examiner cannot be characterized as reckless; there was no misconduct in the prosecutor's cross-examination.

## Instructions

■ (a) At the close of the State's case, the prosecutor requested that the trial court instruct the jury that certain tapes had been excluded from evidence because of their poor quality. The argument of the attorneys and the questions by the trial court indicate that *after* the trial court had excluded the tapes, the defendant would object to testimony on the basis that the tapes were the best evidence of the matter being presented. In light of these tactics by defendant, the prosecutor requested the instruction to correct any impression that the prosecution was trying to withhold the tapes from the jury.

The trial court instructed the jury:

"Ladies and gentlemen, reference has been made to some tapes, and the Court instructs you that the Court has ruled that those tapes can not be put in evidence and played to you because of the poor quality of the tapes and the technical difficulties with them. They frankly—they are just not clear enough that you could really get very much out of them."

Defendant asserts the instruction prejudiced him "in that it created, in the minds of the jurors, the inference that the Defendant was solely responsible for the withholding of the tapes, i. e., that he was trying to 'hide' something." The contention is frivolous. All the instruction states is that the tapes were excluded because of their poor quality. Nothing in the wording of the instruction provides a basis for inferring that either of the parties tried to withhold the tapes.

■ Defendant also claims the instruction was erroneous because it was not predicated on evidence supporting some theory of the case. This contention is also frivo-

lous. Various explanatory instructions are authorized for use. See *U.J.I. Crim.* 1.00 through 1.07, 50.00 through 50.07, 50.20. The trial court can properly instruct or admonish the jury concerning an evidentiary matter in an effort to avoid prejudice. See *State v. Ferguson,* 77 N.M. 441, 423 P.2d 872 (1967); *State v. McFerran,* 80 N.M. 622, 459 P.2d 148 (Ct.App.1969).

■■■ (b) The trial court refused various instructions requested by defendant which went to the credibility of certain witnesses. The trial court gave the general credibility instruction—U.J.I. Crim. 40.20. No other instruction was required. *State v. Smith,* 88 N.M. 541, 543 P.2d 834 (Ct.App.1975).

The judgment and sentence are affirmed.

IT IS SO ORDERED.

HENDLEY and HERNANDEZ, JJ., concur.