610 P.2d 1214

STATE of New Mexico,
Plaintiff-Appellant,

v.

Hugh ARNOLD, Max Chavez, Roy Christensen, Robert E. Shelton, and Speedway Drive-In Food Stores, Inc., Defendants-Appellees.

No. 3705.

Court of Appeals of New Mexico.

July 12, 1979.

Jeff Bingaman, Atty. Gen., Donald B. Monnheimer, James Wechsler, Asst. Attys. Gen., Santa Fe, for plaintiff-appellant.

Robert C. Knight, Moore & Golden, Los Alamos, for defendants-appellees Hugh Arnold and Max Chavez.

John Wentworth, Steven L. Tucker, Jones, Gallegos, Snead & Wertheim, Santa Fe, for defendant-appellee Roy Christensen.

Thomas A. Simons, IV, Sommer, Lawler, Scheuer & Simons, Santa Fe, for defendants-appellees Robert E. Shelton and Speedway Drive-In Food Stores, Inc.

## OPINION

SUTIN, Judge.

By grand jury indictment, defendants were charged with restraint of trade in violation of § 57–1–1, N.M.S.A.1978. Motions to suppress taped recordings, transcriptions and testimony based upon telephone conversations that Edwin A. Kelly had with defendants Arnold and Christensen were sustained and the State appeals. We reverse.

This case involves alleged crimes committed by defendants arising out of an unlawful combination which operated as, or which had as its object, a restriction of trade or commerce such as (1) fixing the retail price of gasoline at service stations in White Rock and Los Alamos, New Mexico, and (2) seeking the removal of, and refraining from posting signs advertising retail gasoline prices at service stations in Los Alamos. At the hearing on defendants' motion to suppress, Kelly was the sole witness. The following summarizes that proceeding.

James W. Earnest, special investigator for the Attorney General obtained Kelly's cooperation in the investigation of possible price fixing in Los Alamos County. At Earnest's request, Kelly initiated two telephone calls to Arnold and one to Christensen, all of which conversations were recorded by instruments loaned to Kelly by Earnest. The recording devices were of two types: one operated by placing a suction cup on the telephone receiver and one which had a cover (or hood) into which the telephone receiver was placed. Arnold and Christensen were without knowledge of the recordation of the conversations and did not consent thereto. A court order was not obtained by Earnest or Kelly to record these conversations before they were made.

At the close of the hearing on defendants' motion to suppress, the court said:

As to the Motion to Suppress statements by the Defendants intercepted by way of telephone, and taken surreptitiously, that Motion is granted. *That is wire-tapping*, maybe not technically, and not in form, but it is a type of activity that this Court does not condone and does not believe that it is fair to use that type of evidence *without a prior court order.* \* \* \* [Y]ou cannot use that evidence in any way. [Emphasis added.]

We respect the sentiments of the trial court, but it is mistaken as to the law. The legislature recognized the deficiencies in the "Abuse of Privacy Act" and amended it by Laws 1979, Ch. 191. As amended, § 30–12–1 begins:

Interference with communications consists of knowingly and without lawful authority. \* \* \* [Emphasis added.]

"[A]nd without lawful authority" was added. Prior to the amendment, a court order was unnecessary to legally obtain telephonic information, and, as we shall point out in our discussions, wiretapping did not occur in this case.

The Order of the trial court reads in pertinent part:

IT IS THEREFORE ORDERED that the contents of the following telephonic communications be, and they hereby are, suppressed for all purposes: Telephonic communications between Ray Christensen and Ed Kelly occurring on December 15, 1977, telephonic communication between Hugh Arnold and Ed Kelly occurring on December 12, 1977, and telephonic communication between Hugh Arnold and Ed Kelly occurring on January 11, 1978.

This Order was entered without reference to the Abuse of Privacy Act, § 30–12–1, et seq., or the Fourth Amendment.

The State contends there is no statutory or constitutional impediment to the use of the recorded and unrecorded conversations as evidence in the trial. We agree.

Based upon the reasons given, the Order entered can be summarily reversed. However, at the hearing, defendants relied on § 30–12–1 and the Fourth Amendment. We feel compelled to answer because the liberty of defendants is at stake.

This issue is a matter of first impression.

Article 12 of the Criminal Code, entitled "Abuse of Privacy" contains the following title:

An act relating to communications; providing for *interception* of wire or oral communications under court order * *. [Emphasis added.]

The pertinent parts of § 30–12–1(B), (C) and (E) read:

*Interference with communications* consists of knowingly:

\*   \*   \*   \*   \*   \*

B. *cutting, breaking, tapping* or making any *connection* with any * * * telephone line * * * *belonging to another*;

C. *reading, hearing* * * * *taking* or copying any message, communication or report *intended for another* by * * telephone *without his consent*;

\*   \*   \*   \*   \*   \*

E. *using any apparatus* to do or cause to be done any of the acts *hereinbefore*

mentioned or *to aid, agree with, comply or conspire with any person to do*, or permit or cause to be done any of the acts *hereinbefore* mentioned. [Emphasis added.]

The purpose of the Act is to protect an individual's privacy of communication against unjustified intrusion. "Yet, we apprehend that society also has an interest in seeing that, in the administration of justice, the law seek out the best and most reliable information. This concept appears to have been given recognition through the consent features imbedded in the statutes." *State v. Wigley*, 210 Kan. 472, 502 P.2d 819, 821 (1972).

A. *The telephone conversations between Kelly and defendants are admissible in evidence.*

Justice White, in his concurring opinion in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), said:

\* \* \* This application of the Fourth Amendment need not interfere with legitimate needs of law enforcement. [389 U.S. at 363, 88 S.Ct. at 517.]

A note followed this statement, which, absent citation of authorities, reads:

\* \* \* When one man speaks to another he takes all the risks ordinarily inherent in so doing, including the risk that the man to whom he speaks will make public what he has heard. The Fourth Amendment does not protect against unreliable (or law-abiding) associates. It is but a logical and reasonable extension of this principle that a man take the risk that his hearer, free to memorize what he hears for later verbatim repetitions, is instead recording it or transmitting it to another.

We have held that a face-to-face conversation between defendant and a district attorney, monitored with a concealed device on the district attorney, is admissible in evidence. *State v. Hogervorst*, 90 N.M. 580, 566 P.2d 828 (Ct.App.1977).

In *Mitchell v. State*, 239 Ga. 3, 235 S.E.2d 509, 511 (1977) the court said:

No contention is made that this code section in any way attempts to prohibit

the revelation of the content of a telephone conversation by one of the parties to it. We have found no decision in any jurisdiction in the English speaking world that has made such a holding.

█ One who voluntarily enters into a conversation with another takes the risk that the other person on the line may memorize, record, or even transmit the conversation. When Kelly gave his consent to Earnest to record the conversation between himself and the defendants, the conversation was divested of its private character. *Pearson v. State*, 556 P.2d 1025 (Okla.Crim. App.1976).

Federal and state cases are collected in *People v. Drielick*, 400 Mich. 559, 255 N.W.2d 619 (1977). There is almost uniformity of opinion that warrantless electronic eavesdropping of telephone conversations, *with consent of a participant*, does not violate the Fourth Amendment prohibition against unreasonable searches and seizures. *Drielick* said:

> * * * No distinction has been made between electronic monitoring of face-to-face conversations and of telephonic communications. [255 N.W.2d at 622–3.]

In the instant case, defendants took the risk that Kelly would make public what he heard by telephone. Indeed, *Wigley* quotes the following from §§ 4.1 and 4.2 of the American Bar Standards relating to Electronic Surveillance, page 127:

> "The crucial issue in any overhearing or recording situation is * * * the right of the witness himself to testify. Where he is entitled to testify, there can be no valid objection to the use of an overhearing or recording device, and the introduction of its product at trial." [502 P.2d at 822–23.]

Defendants rely on *State v. Chort*, 91 N.M. 584, 577 P.2d 892 (Ct.App.1978). *Chort* deals with a reasonable expectation of privacy under the Fourth Amendment wherein a search was made of defendant's garden which was surrounded by an almost solid five foot fence. The court said:

> The Fourth Amendment protects people, not places. What a person knowingly exposes to the public is not protected by the Fourth Amendment and what he seeks to preserve as private even in an area accessible to the public may be constitutionally protected. *Katz v. United States* * * *.

This rule is not applicable to telephone conversations.

The trial court erred in suppressing the telephonic conversations.

**B.** *The State did not unlawfully intercept the telephone conversation in violation of subsection (B) of § 30–12–1.*

Subsection (B) of § 30–12–1 provides that interference with a telephone communication occurs when information is obtained by *tapping* or *making a connection* with a telephone *line that belongs to another.*

A "tap" has been defined as "to cut in on (a telephone or telegraph wire) to get messages, information, or evidence." Webster's Third International Dictionary (1966), p. 2339. The State did not tap the telephone line. Neither did the State make a "connection" with the telephone lines. There was no mechanical interference. *State v. Vizzini*, 115 N.J.Super. 97, 278 A.2d 235 (1971). Earnest installed recording equipment on Kelly's telephone line, a mere accessory designed to preserve the contents of the communication. *United States v. Harpel*, 493 F.2d 346 (10th Cir. 1974).

The "telephone line," is distinguished from the "telephone." A "telephone" is an instrument in which sound is converted into electrical impulses for transmission by a "telephone line," which, of course, belongs to the telephone company. To whom the "telephone line" belonged is immaterial. The State did not tap or make connection with the telephone line.

The State did not violate subsection (B).

**C.** *The State did not unlawfully intercept the telephone conversations in violation of subsection (C) of § 30–12–1.*

Subsection (C) of § 30–12–1 also relates to one who is not a party to a private

telephone conversation. An interference occurs if a third person reads, hears, takes or copies any telephone message or communication from one party intended for another party on the line "*without his consent.*" "It is never a secret to one party to a conversation, that the other party is listening to the conversation; only a third party can listen secretly to a private conversation." *Rogers v. Ulrich*, 52 Cal.App.3d 894, 125 Cal.Rptr. 306, 309 (1976).

Let us turn to the phrase "without *his* consent." To clarify this subsection, the legislature amended subsection (C) to read:

＊ ＊ ＊ without the consent of a sender or intended recipient thereof.

■ The legislature intended to express its view of the meaning of the phrase "without his consent." It means "without the consent of one of the parties." If the consent of one of the parties is obtained, the messages are admissible in evidence. American Bar Association Standards relating to Electronic Surveillance, § 4.1. *See, State v. Wigley, supra.*

Subsection (C) stands alone among the states whose statutes have been read. In *Wigley*, the Breach of Privacy Act referred to interception "without the consent of the sender or receiver." The consent of one of the parties was sufficient. In the eavesdropping section, where consent was ambiguous, and the court was left to its "own bare-bone resources," it resolved the issue in favor of the admissibility of the evidence.

Arnold relies on *State v. Toomey*, 134 Ga.App. 343, 214 S.E.2d 421 (1975). In Georgia, lawful interception required the consent of the sender *and* receiver. 26 Ga. Code Ann. § 26–3006. In *Toomey*, an investigator listened in on various conversations made by defendant as sender but without defendant's consent. The State did not have the consent of the sender *and* receiver, and defendant was protected. *Toomey* does not assist defendants.

We have reviewed the cases cited by Christensen. To discuss them would unduly extend this opinion. Because of different statutes, different results arise, but none of them play any significant role in support of defendants' position.

Christensen seeks to escape subsection (C). During his conversation with Kelly, Christensen thought he was talking to Kelly's son; that Kelly's son was the "intended recipient." Kelly then identified himself and the conversation continued. Christensen never indicated that the conversation was *not* intended for Kelly. If it were not so intended, Christensen's duty was to inform Kelly of that fact. He did not. We hold that Christensen intended and consented to the conversation with Kelly, and Kelly was the "intended recipient."

Consent having been given by Kelly to Earnest to record the conversation, no interference occurred and the contents of the conversations as recorded are admissible in evidence.

There was no violation of subsection (C).

The Order that suppressed the contents of the telephone conversations between Kelly and defendants is reversed.

IF IT SO ORDERED.

HERNANDEZ, J., concurs in result.

WALTERS, J., dissents.

WALTERS, Judge (dissenting).

At the behest of an investigator from the attorney general's office, Edwin A. Kelly permitted a recording device to be attached to his home and service station telephones, and he initiated three telephone calls to defendants Arnold and Christensen. The conversations with defendants were tape-recorded. Subsequently, all of the named defendants-appellants were indicted for restraint of trade violations. The trial court sustained motions to suppress the taped recordings, their transcriptions and testimony based on those conversations.

The trial court should be sustained, with the exception that testimony from Mr. Kelley regarding the conversations may be admitted.

The motions filed by defendants were based upon alleged violations by Kelly and the State of §§ 30–12–1, et seq., N.M.S.A.

1978, and the state and federal constitutions.

Sections 30–12–1, at the time the conversations were recorded, prohibited interference with communications unless done under a court order, and defined such interference to be:

A. displacing, removing, injuring or destroying any radio station, T.V. tower, antenna or cable, telegraph or telephone line, wire, cable pole or conduit belonging to another, or the material or property appurtenant thereto;

B. cutting, breaking, tapping or making any connection with any telegraph or telephone line, wire, cable or instrument belonging to another;

C. reading, hearing, interrupting, taking or copying any message, communication or report intended for another by telegraph or telephone without his consent;

D. preventing, obstructing or delaying the sending, transmitting, conveying or delivering in this state of any message, communication or report by or through telegraph or telephone; or

E. using any apparatus to do or cause to be done any of the acts hereinbefore mentioned to aid, agree with, comply or conspire with any person to do, or permit or cause to be done any of the acts hereinbefore mentioned.

*None* of the prohibited acts are permitted; one need not violate *each* subsection in order to come under the interdiction of the statute.

The State has premised its entire argument on Kelly's acquiescence to "tap" the telephones in Kelly's business and home. Some argument is presented questioning whether Kelly's "rental" of the telephones from Mountain Bell brings the telephones within the prohibition against "tapping * * * any * * * instrument belonging to another," assuming that Kelly was the person who did the tapping. This argument is specious. The tapping was done by the State with Kelly's acquiescence. There is no contention that the State owned the telephones. Whether Kelly or Mountain Bell owned the telephones, the State did not.

The statute prohibits tapping any "instrument belonging to another"; it also prohibits "hearing  *  *  *  taking or copying any message  *  *  *  intended for another  *  *  *  without his consent."

According to Kelly, Christensen believed he was talking to Kelly's son; thus, Christensen's message was intended neither for Kelly nor Ernest. He was not advised that his conversation was being taped, so patently he did not consent. Likewise, Arnold was not told of the recording device nor asked whether he consented to anyone other than Kelly "hearing  *  *  *  or copying" his message.

The majority opinion discusses at length the meaning of "tapping," and whether the consent of one of the participants is sufficient to overcome the prohibitions of § 30–12–1C. This regard for the exceptions allowed by the statute overlooks the constitutional objections raised by the appellants which, in my view, should command our first attention.

The statutory language referring to "without his consent" is ambiguous. New Mexico, unfortunately, provides no legislative history or committee commentary to assist the court in interpreting its intentions. Nevertheless, it is hornbook law that the Legislative may not transcend constitutional limitations regardless of its intent, and a statute which is interpreted to permit one party to waive another's constitutional right to privacy is no more acceptable than if we were to approve the innkeeper's permission for search of a guest's room. *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). Thus, whether we define the "his consent" of § 30–12–1C to mean "consent of the sender" or "consent of the receiver," if one may not consent for the other, then the "tapped" and taped conversations of *both* parties may not be used as evidence against the unsuspecting, unconsenting speaker. This exclusion is mandated by a literal reading of Article II, § 10, of the New Mexico Constitution, and from an appreciation for decisions from other state courts interpreting similar provisions

in their state constitutions,[1] notwithstanding federal decisions interpreting the Fourth Amendment to the United States Constitution differently.[2] Each state has power to require higher police practice standards than is imposed by the federal Constitution.[3]

We must keep foremost in our minds the purpose of the statute itself, which is a clear statement of the Legislature's recognition of the individual's right to privacy. Article 12 of the New Mexico's Chapter 30 of the statutes is entitled "Abuse of Privacy." It is a part of our Criminal Code. It makes criminal *any* of the acts described in Subsections A through E of § 30–12–1.

Thus it is irrelevant how one defines "tapping." It is not denied that the communication was copied without the consent of one of the parties, and that it was done by means of an apparatus furnished by one who agreed or conspired with another to do what the statute says may not be done.

I think the majority opinion misreads Justice White's concurring opinion *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1976). There, an electronic listening device was attached to a public telephone booth and defendant's part of telephone conversations was recorded. The tapes were introduced at his trial. The majority opinion declared at 88 S.Ct. 512 that "[t]he Government's activities in electronically listening to and recording the petitioner's words violated the privacy which he justifiably relied and thus constituted a 'search and seizure' within the Fourth Amendment." The Court reiterated the necessity for presenting to a "duly authorized magistrate" the facts showing a need for investigation in order to obtain proper authorization for the "limited search and sei-

zure" necessary under the circumstances. The entirety of the paragraph from Justice White's concurring opinion, part of which is quoted at page 1216 of the majority opinion is:

I agree that the official surveillance of petitioner's telephone conversations in a public booth must be subjected to the test of reasonableness under the Fourth Amendment and that on the record now before us *the particular surveillance undertaken was unreasonable absent a warrant properly authorizing it.* This application of the Fourth Amendment need not interfere with legitimate needs of law enforcement. (My emphasis.)

Justice White's note referred to in the majority opinion cites *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), as authority for the above comments made by Justice White, *and continues*:

The present case deals with an entirely different situation, for as the Court emphasizes the petitioner "sought to exclude * * * the uninvited ear," and spoke under circumstances in which a reasonable person would assume that uninvited ears were not listening.

This, too, is a case where defendants "sought to exclude * * * the uninvited ear." They reasonably assumed that only Kelly was listening to their conversation.

The *Drielick* case cited in the majority opinion reached the result it did only because it was a case pending on appeal at the time *People v. Beavers*, 393 Mich. 554, 227 N.W.2d 511 (1975), was decided. *Beavers* held that, unless authorized by a search warrant, under a Michigan constitutional provision which parallels ours a *participant* may not monitor and transmit to law en-

1. *People v. Plamondon*, 64 Mich.App. 413, 236 N.W.2d 86 (1975); *People v. Beavers*, 393 Mich. 554, 227 N.W.2d 511 (1975); *Breese v. Smith*, 501 P.2d 159 (Alaska 1972); *State ex rel Arnold v. County Court*, 51 Wis.2d 434, 187 N.W.2d 354 (1971).

2. See decisions collected at footnote 11, *People v. Drielick*, 400 Mich. 559, 255 N.W.2d 619 (1977).

3. *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); *State v. Florance*, 270 Or. 169, 527 P.2d 1202 (1974). A conscientious, meaningful judicial process does not contemplate lining up all "pro" cases on one side of the fence, and all "con" cases on the other, and then falling off on the side with the greater number.

forcement officers a conversation he has with another, without the other's consent. But *Beavers* was limited to prospective application only. Thus, the *Drielick* decision required adherence to the Michigan precedents *not* decided under Michigan's constitution and prior to *Beavers*, which permitted warrantless eavesdropping and recording of telephone calls made with cooperation of a police informant or witness.

We may not overlook, either, that the *Drielick* comment, quoted at page 1217 of the majority opinion, referred to Michigan's evaluation of federal decisions interpreting the federal Fourth Amendment, since *Drielick* was a federal Fourth Amendment challenge rather than an alleged violation of Michigan's constitutional provision.

Without citation, the opinion declares that the rule of *State v. Chort*, 91 N.M. 584, 577 P.2d 892 (Ct.App.1978), i. e., that a reasonable expectation of privacy is constitutionally protected, "is not applicable to telephone conversations." *Chort* also pleaded Art. II, § 10, of the New Mexico Constitution as a barrier to use of the evidence obtained without a search warrant. It appears that the opinion, however, was bottomed on the Fourth Amendment privilege. Nevertheless, I see no reason to declare that the rule of *Chort* cannot apply to telephone conversations, particularly since defendants here claim they seek to preserve as *private* that which occurred an area *not* accessible to the public. How much more so should the rule of *Chort* apply here than there, where defendant's outdoor garden was held to be protected against warrantless intrusion!

Finally, New Mexico is not bound by plurality opinions of the United States Supreme Court (or by precedent of federal courts of appeal) which rule upon the limits of federal constitutional rights; and only majority opinions of the Court are controlling with respect to our construction of federal constitutional provisions. *People v. Anderson*, 389 Mich. 155, 205 N.W.2d 461 (1973); *State v. Johnson*, 68 N.J. 349, 346 A.2d 66 (1975). The New Mexico Constitution is an independent document, and it is

"our responsibility to separately define and protect the rights of [New Mexico] citizens despite conflicting decisions of the United States Supreme Court interpreting the federal Constitution." *People v. Disbrow*, 16 Cal.3d 101, 127 Cal.Rptr. 360, 545 P.2d 272 (1976).

To determine that, at least in New Mexico, a statute authorizing eavesdropping and its techniques must be read to require consent of both parties to record, and thereafter use as evidence, the entire conversation obtained by an apparatus attached to the telephone or telephone lines, in order to bring the statute within constitutional limitations, does not deprive law enforcement officers of these useful tools. It merely insists that unless the parties consent to their conversation being taped, an investigator wishing to do so must present sufficient probable cause to a neutral magistrate and specifically inform him of the need for the investigation, so that an ex parte order authorized under § 30–12–2, or a search warrant, may be issued. Unless the statute be so read, the legislature has undertaken to pass an unconstitutional act, and it is without power to do so.

One need only remember his American history to recall that assurance of a federal Bill of Rights that would reflect corresponding provisions of one or more existing *state* constitutions was the only reason why many of our original states ratified the Constitution of the United States. It is through the lessons of history that we should be impressed not only with the privilege and duty to resist encroachments upon the rights expressly protected by the New Mexico Constitution, but our obligation to decline to follow those jurisdictions which whittle away the protections stipulated for in their constitutions.

I, therefore, respectfully dissent, and would affirm the trial court's suppression of the illegally obtained tapes. I would reverse the order of the trial court insofar as it might be construed to prohibit Kelly from testifying about the telephone conversations. *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).