859 P.2d 1065 (1993)
859 N.M. 38
In the Matter of Charles H. REID, Esq. An Attorney Admitted to Practice Before the Courts of the State of New Mexico.
No. 21394.
Supreme Court of New Mexico.
September 21, 1993.
*1066 Sally E. Scott, Deputy Chief Disciplinary Counsel, Albuquerque, for Disciplinary Bd.
Charles H. Reid, pro se.

DISCIPLINARY PROCEEDING

OPINION
PER CURIAM.
This matter came before the Court upon the recommendation of the Disciplinary Board and Hearing Committee to publicly censure Charles H. Reid for incompetence, neglect, and failure to adequately communicate with his client. The Court agrees that it is appropriate for Reid to be publicly censured for his conduct.
In July 1983, Reid was retained by Nick Bakas to pursue a medical malpractice suit for the death of his father, Steven Bakas, who died on April 23, 1983, five days after he was released from a nursing home. Nick Bakas believed that the nursing home was negligent in caring for his father and that its negligence caused or contributed to the deterioration of his father's condition and his death.
Reid filed suit against the nursing home on April 18, 1986. During the almost three years before Reid filed suit, he took virtually no action to pursue the case.[1] He did not obtain medical records from the nursing home. The only medical records Reid had were from the hospital where Steven Bakas died; his client obtained those records. Reid did not conduct any investigation into the factual basis of the claim. He did not ascertain the names of the doctors who treated Bakas at the nursing home or the names of the nurses or other staff members who were responsible for his care.
Not until early April of 1986 did Reid research the legal basis for the claim or determine the applicable statute of limitations. Reid had incorrectly assumed for three years that, because Steven Bakas died, the statute of limitations ran from the date of his death. When he finally researched the issue, he discovered that under the applicable statute of limitations, NMSA 1978, Section 41-5-13, the three-year statute ran from the date(s) on which malpractice occurred. Reid quickly prepared a complaint and filed it three years from the day on which Steven Bakas was removed from the nursing home.
After filing suit, Reid delayed another ten months before having the defendant nursing home served. During that time, he still took no action to investigate the factual basis of the case, determine the identity of potential witnesses, or obtain medical records from the nursing home.
In April 1987, the defendant nursing home filed a motion to dismiss on the ground, among others, that the statute of limitations had run. The motion was granted and Reid appealed. In October 1987, the New Mexico Court of Appeals reversed and remanded to the district court, holding it was possible for the plaintiff to recover on the basis that the defendant failed to render reasonable care up to the actual hour Bakas was removed from the nursing home. The fact that Reid narrowly escaped missing the statute of limitations does not, of course, indicate that he represented his client diligently or competently.
Six months later, the defendant filed bankruptcy in California. During the six months between remand and the initiation of bankruptcy proceedings, Reid took no *1067 action to pursue the case. He filed no discovery requests; he took no depositions. He did not identify the doctors responsible for Steven Bakas' care at the nursing home.
Reid maintained that he did not pursue the case more aggressively because he was conducting settlement negotiations with the nursing home's insurer and thought the case would settle. By Reid's own testimony, these negotiations consisted of two or three conversations with these representatives before filing suit, and another two or three conversations after suit was filed, but before the defendant was served. Although Reid says he tendered a settlement offer, he concedes no counteroffer was ever extended. Reid offered no evidence to corroborate his contacts with the defendant's representatives. The attorney for the defendant testified at the hearing in this matter that the information his client furnished him contained no indication of any such contacts. Even if such contacts took place, they did not constitute diligent prosecution of his client's legal matter.
Between the date on which Reid was retained and the date on which suit was filed, there were several telephone conversations between Nick Bakas and Reid in which Bakas inquired about the progress of the case. On such occasions Reid assured Bakas that he was negotiating with representatives of the nursing home's insurance carrier and that he expected the matter to be concluded favorably. In reality, even accepting Reid's version, the negotiations were preliminary only; he had not provided the insurance company with a demand letter or any medical information. He had not received a counteroffer to the settlement offer he states he made. A lawyer shall keep his or her client reasonably informed about the status of the matter. SCRA 1986, 16-104(A). This necessarily implies that the lawyer will provide accurate information to his client. Reid's assurances to his client did not reasonably inform his client of the true status of the matter.
In his appearance before this Court, Reid acknowledged violating the Rules of Professional Conduct. Before the Disciplinary Board panel and Hearing Committee, Reid admitted he erred on the statute of limitations issue, but maintained that controlling the timing of the litigation was within his prerogative as the lawyer. Rule 16-102 of the Rules of Professional Conduct provides that the lawyer determines the means by which the client's objectives are to be attained, after consultation with the client. This presumes there is a reason for the lawyer's actions; it does not grant unfettered latitude to do virtually nothing on a client's matter until the statute of limitations stares the lawyer in the face. "When one contracts with an attorney for legal services, he or she is entitled to expect that the attorney will take action of some sort." In re Carrasco, 106 N.M. 294, 295, 742 P.2d 506, 507 (1987).
A license to practice law is a privilege. See SCRA 1986, 17-205. It carries with it the responsibility to provide service to one's clients. Failing to act on a client's matter with due diligence violates the trust a lawyer is given when he or she receives a license to practice law. A handful of telephone calls to the defendant's insurance company does not satisfy the requirement of SCRA 1986, 16-103 that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."
Further, taking no action to investigate the factual basis of a client's case, identify witnesses, or obtain relevant documents, and conducting no research into the legal basis for the claim or the applicable statute of limitations does not satisfy the requirement of providing competent representation, defined as "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." SCRA 1986, 16-101. Reid's conduct in this matter did not constitute competent representation and, thus, violated Rule 16-101.
We, therefore, adopt the findings of the Hearing Committee as modified by the Disciplinary Board. The Court agrees that public censure, pursuant to SCRA 1986, 17-206(A)(4), is the appropriate discipline to be imposed. This conclusion is based in part on the fact that Reid previously received an informal admonition for violating *1068 the same provisions of the Rules of Professional Conduct.[2] Under the ABA Standards for Imposing Lawyer Sanctions, reprimand or censure is appropriate when an attorney has been admonished and then engages in the same type of misconduct. Although the standards do not distinguish between reprimand and censure, our rules do. See SCRA 1986, 17-206(A)(4) and (5). Because of the severity of the neglect involved in this case, public censure, not a reprimand, is warranted.
NOW, THEREFORE, IT IS ORDERED that Charles H. Reid be and he hereby is publicly censured for incompetence, lack of diligence and failure to adequately communicate with his client.
IT IS FURTHER ORDERED that this public censure shall be published in New Mexico Reports and the Bar Bulletin and shall be filed in the office of the clerk of the supreme court, pursuant to SCRA 1986, 17-206(D).
IT IS FURTHER ORDERED that Charles H. Reid shall pay the costs of this proceeding in the amount of $747.99 on or before December 15, 1993, with interest accruing on any balance unpaid as of that date, at the rate of fifteen (15) percent per annum.
IT IS SO ORDERED.
NOTES
[1] In July 1983, Reid did prepare the paperwork necessary to have Nick Bakas appointed personal representative of his father's estate.
[2] Pursuant to SCRA 1986, 17-308, the issuance of an informal admonition is confidential, except that, as occurred here, it may be introduced into evidence in subsequent proceedings, if relevant. An informal admonition is relevant in a subsequent proceeding which discipline is imposed for the same or similar conduct.