# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMSC-003**

**Filing Date: December 19, 2019**

**No. S-1-SC-37594**

**IN THE MATTER OF
RAFAEL PADILLA**

**An Attorney Suspended from the
Practice of Law Before the Courts
of the State of New Mexico**

Released for Publication February 11, 2020.

Christine E. Long
Albuquerque, NM

for Disciplinary Board

Rafael Padilla
Albuquerque, NM

Respondent

## OPINION

**VIGIL, Justice.**

**{1}**     With this opinion, we address the failure of Rafael Padilla to competently and diligently defend his client against various criminal charges in violation of the New Mexico Rules of Professional Conduct, Rules 16-100 to -805 NMRA. The Court was presented with this case upon the recommendation of the Disciplinary Board (the Board) to sustain charges and impose discipline based on the Board's conclusion that Padilla violated Rules 16-101 (competence), 16-103 (diligence), and 16-804(D) (engaging in the administration of justice). The Board recommended an indefinite suspension of Padilla for a period of no less than one year.

**{2}**     The Court adopted the Board's findings of fact following oral argument in this matter. Upon review, we adopt the Board's conclusions of law in their entirety. Modifying the Board's recommended discipline, we indefinitely suspended Padilla from the practice of law for no less than one year, subject to partial deferment and conditions on his reinstatement as explained in this opinion and in our order of July 9, 2019. Though Padilla has fully admitted the facts underlying his misconduct  and has taken significant

remedial measures to improve his practice, we must impose discipline to avoid reoccurrence of his grave errors.

## I.     BACKGROUND

**{3}**     Padilla has been licensed to practice law in New Mexico for thirty-six years. He has a prior disciplinary offense for violating the rules of trust accounting. Padilla's private practice in Albuquerque focuses primarily on criminal defense. Beginning in 2013, Padilla defended Dennis Samuel Miera (Defendant) against charges of criminal sexual penetration of a minor, criminal sexual contact of a minor, and bribery of a witness. *State v. Miera*, 2018-NMCA-020, ¶¶ 1-2, 413 P.3d 491. A jury found Defendant guilty of all counts charged following a trial in December 2014, during which Padilla committed several serious errors. *Id.* ¶¶ 3-4, 46. Defendant appealed his convictions claiming ineffective assistance of counsel and seeking a new trial based largely on Padilla's failures at his first trial. *Id.* ¶ 1. The Court of Appeals granted a new trial, concluding that Defendant had made a prima facie showing of ineffective assistance of counsel and that cumulative error had denied him a fair trial. *Id.* ¶¶ 44, 46, 50. Defendant was incarcerated for approximately three years before his conviction was reversed and his case remanded for a new trial.

**{4}**     Following the Court of Appeals' opinion detailing Padilla's deficiencies in representing Defendant, the Board initiated an investigation and ultimately charged Padilla with professional misconduct in August 2018. Padilla did not contest the Board's charges and admitted all factual allegations contained in the specification of charges.

**{5}**     Padilla failed to provide competent and diligent representation to Defendant in four instances. First, he failed to acquaint himself with the relevant law and to take the steps necessary to meaningfully oppose the State's impeachment of Defendant using a psychological evaluation prepared for purposes of plea negotiations. *Id.* ¶¶ 6-12. Second, Padilla failed to investigate potentially exculpatory evidence that the alleged victim had accused her stepfather of similar abuse and then recanted her allegations. *Id.* ¶¶ 19-22, 34-36. Third, Padilla elicited testimony from an investigating officer regarding Defendant's sexual desires and failed to cure the officer's improper and unsupported characterization of Defendant as a "sexual deviant." *Id.* ¶ 37. Fourth and finally, Padilla failed to adequately investigate and research the admissibility of a report by the Children, Youth and Families Department (CYFD)—a report that he could have used to question the alleged victim's credibility. *Id.* ¶¶ 38-39. Thus, Padilla was not able to introduce the report or successfully move its admission, in whole or in part. *Id.* We describe each instance of misconduct in turn.

### A.     Psychological Evaluation

**{6}**     As part of plea negotiations, Defendant completed a psychological evaluation that was documented for use in determining his sentence. *Id.* ¶ 6. Defendant's responses in the evaluation essentially amounted to an admission that he engaged in improper sexual contact with the alleged victim. *See id.* ¶ 11. The evaluation also

contained a statement that Defendant "continued to keep the [alleged victim and her brother] overnight through the time of the alleged event," a fact which Defendant disputed at trial.

**{7}**     The psychological evaluation was given to the State before trial. *Id.* ¶ 6. The State did not attempt to introduce the evaluation in its case in chief. *See Miera*, 2018-NMCA-020, ¶¶ 8, 14 ("Rule 11-410(A)(5) NMRA prohibits 'a statement made during plea discussions' from being admitted against the defendant where the discussions did not ultimately result in a guilty plea."). Instead, the State notified the district court and Padilla that it planned to use the evaluation to impeach Defendant should he testify in his own defense. *Id.* ¶ 8. The State cited *State v. Watkins*, 1979-NMCA-003, 92 N.M. 470, 590 P.2d 169, to support its position that the evaluation was admissible impeachment evidence. *Miera*, 2018-NMCA-020, ¶ 8. Padilla responded that he had not seen the evaluation and was not previously made aware that the State intended to introduce it to impeach Defendant. *Id.* The State replied that it had discussed the evaluation "a number of times" with Padilla before the trial.

**{8}**     The district court recessed to allow the parties "to gather written authorities for use or nonuse of the material." *Id.* ¶ 9 (internal quotation marks omitted). When the district court reconvened, Padilla was unable to offer any authority to support the exclusion of the psychological evaluation for impeachment purposes, conceding that the holding of *Watkins* permitted the State to use the evidence to impeach Defendant. *Miera*, 2018-NMCA-020, ¶ 9. This response demonstrates Padilla's lack of competence in this area of our evidentiary rules and case law. As we will explain, the State's reliance on *Watkins* is misplaced, and our precedent interpreting Rule 11-410 clearly prohibits the use of statements made during plea negotiations for impeachment purposes.

**{9}**     Before making its ruling, the district court asked Padilla to confirm that he did not locate any authority to rebut the State's argument that the evaluation could be used to impeach Defendant's testimony. *Miera*, 2018-NMCA-020, ¶ 9. Padilla confirmed that he did not and added that he "had very little knowledge of this report, and he certainly didn't have a copy of it." *Id.* (alteration and internal quotation marks omitted). The district court ruled that the State could use the evaluation to impeach Defendant but offered to instruct the jury that it could "only use the evaluation for purposes of credibility and impeachment." *Id.* (alteration and internal quotation marks omitted). Padilla never requested this limiting instruction, even after the State used the evaluation to elicit damaging admissions from Defendant on cross-examination. *Id.* ¶¶ 9, 11.

**{10}**     Defendant testified at trial that he did not recall keeping the alleged victim and her brother overnight at the time of the alleged abuse and had never admitted that he abused the alleged victim. *Id.* ¶¶ 10-11. The State attempted to refresh Defendant's memory, giving him the documentation of the psychological evaluation to review. The State then used the evaluation to impeach Defendant's testimony by asking Defendant how he responded to certain statements in the evaluation. *Id.* For example, the State asked, "Did you respond in the affirmative or otherwise indicate that you made a mistake which you regret?" and "Did you respond in the affirmative or otherwise indicate

that you slipped one time?" *Id.* ¶ 11. Defendant answered yes to each of the State's questions consistent with the documentation of the psychological evaluation. *Id.*

## B. Similar Recanted Allegations

**{11}** Defendant filed a motion for new trial based on newly discovered evidence after his appellate counsel learned that the alleged victim had also accused her stepfather of sexual abuse. *Id.* ¶ 19. The alleged victim later recanted her allegations against her stepfather, and the State voluntarily dismissed the charges against him. *Id.* In his motion for new trial, Defendant argued that the alleged victim's recantation was important impeachment evidence that the State failed to disclose. *Id.*

**{12}** The district court denied Defendant's motion after hearing testimony from Padilla and Jacob Payne, the prosecutor in Defendant's case and the dismissed case against the stepfather, as well as from Defendant's first trial attorney. *Id.* ¶¶ 20-23. Padilla testified that he had no memory of the State informing him of the case against the stepfather, but he admitted that Defendant had provided him "limited" information that the stepfather was suspected of abusing the alleged victim. *Id.* ¶ 21 (alteration and internal quotation marks omitted). Even armed with that information, Padilla did not remember questioning the alleged victim about "lying or being molested by [her stepfather]." *Id.*

**{13}** Payne, on the other hand, testified that he had "a specific memory" of discussing the case against the stepfather and its ultimate dismissal with Padilla. *Id.* ¶ 22. Payne admitted, however, that he did not have a written record that he had informed Padilla of the alleged victim's recantation of her accusation against her stepfather. *Id.* Because Padilla's memory was "attenuated and conditional" while Payne's memory was detailed and specific, the district court concluded that Padilla "was aware of the . . . case [against the stepfather], the nolle [prosequi], and the recantation." *Id.* ¶ 23 (second alteration in original) (internal quotation marks omitted).

**{14}** The Court of Appeals affirmed the district court's denial of Defendant's motion for a new trial, concluding that the district court's ruling was supported by sufficient evidence that Padilla knew about the case against the stepfather and the recantation before the conclusion of Defendant's trial. *Id.* ¶¶ 26-27. In fact, the stepfather's case was discussed at Defendant's trial. *Id.* ¶ 26. Before Defendant commenced his case in chief, the State reported to the district court that it had dropped the charges against the stepfather. *Id.* The Court of Appeals noted that "Padilla expressed no surprise and made no indication that he was previously unaware of this information" during this discussion at trial. *Id.*

**{15}** In the end, Padilla failed to investigate the case against the stepfather on Defendant's behalf. Padilla admitted at the hearing on Defendant's motion for new trial that evidence of the alleged victim's recantation of her allegations against her stepfather "would have changed the course of the trial." *Id.* ¶ 36 (internal quotation marks omitted). As the Court of Appeals stated,

[Padilla] admitted he had received information from [Defendant] that [the stepfather] had gotten in some trouble because of his behavior toward [the alleged victim] but failed to investigate that information. Undoubtedly, allegations of sexual molestation of the victim by another individual around the same time period raise questions about the identity of the actual perpetrator of the molestation. . . . [I]n a trial involving allegations of sexual abuse, there can be little more probative evidence than that which suggests the possibility that the allegations made by the alleged victim are false; and, evidence of the falsity of prior similar allegations are significant indicia of innocence that any effective attorney knows to pursue.

*Id.* ¶¶ 35-36. Padilla's failure to investigate the case against the alleged victim's stepfather demonstrates his lack of competence and diligence in representing Defendant.

### C. "Sexual Deviant" Testimony

**{16}** During Padilla's cross-examination of an investigating officer in Defendant's case, Padilla elicited testimony regarding Defendant's sexual desires. *See id.* ¶ 37. Padilla asked what had led the officer to arrest Defendant. *Id.* The officer replied that he made the arrest based in part on knowledge of Defendant's "sexual desires, [which] all fits in with the sexual deviant nature of the individual." *Id.* (internal quotation marks omitted). Padilla then asked which of Defendant's "sexual desires" the officer used to support his arrest of Defendant.

**{17}** The State objected to the testimony, likely based on concern that the officer's characterization of Defendant would result in reversible error. *Id.* The State explained that the officer's statement went "to essentially irrelevant consensual sex acts between two adults that don't really bear on this particular issue at all." *Id.* (internal quotation marks omitted). The State's objection was sustained and Padilla withdrew his question during a bench conference, but Padilla did not request that the officer's statement be stricken from the record or limited in any way. *Id.* That Padilla pursued this tactically risky line of questioning and then failed to move to strike, limit, or otherwise cure the officer's unsupported and improper characterization of Defendant is additional evidence of Padilla's lack of competence.

### D. CYFD Report

**{18}** Around the time of the purported sexual abuse in Defendant's case, the alleged victim claimed that her mother and stepfather had physically abused her, prompting a CYFD investigation. *Id.* ¶ 38. The allegations of physical abuse were found to be unsubstantiated in a report produced by CYFD. *Id.* Padilla sought to admit this report twice but was denied each time by the district court, in part because Padilla failed to produce a witness who could authenticate the report.

**{19}** After the district court's first denial of Padilla's request and during a break in trial, Padilla read in the report that the alleged victim had stated that "she had never experienced bad touch." *Id.* ¶ 39 (internal quotation marks omitted). It would appear that Padilla had not read this portion of the report prior to the break in trial. *Id.* Padilla again requested to use the report to attack the alleged victim's credibility but was unable to provide any authority to support the report's admission, and the request was again denied. *Id.* Padilla failed to take the necessary steps to properly introduce this crucial piece of evidence with foundational support, further demonstrating his lack of competence and diligence in preparation for trial.

## II.    DISCUSSION

**{20}** The Board adopted the hearing committee's findings of fact and conclusions of law that Padilla violated Rules 16-101, -103, and -804(D). In reviewing the disciplinary proceedings, we view the evidence in the light most favorable to the Board's findings of fact. *In re Dixon*, 2019-NMSC-006, ¶ 5, 435 P.3d 80. "We review the Board's conclusions of law de novo." *Id.* ¶ 19. Accordingly, we adopt the Board's findings of fact and conclusions of law in their entirety. Padilla's misconduct evinces a lack of competence and diligence that is prejudicial to the administration of justice.

### A.    Competence and Diligence

**{21}** Rule 16-101 mandates that lawyers "provide competent representation" to their clients. "Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Rule 16-101. Thorough preparation "includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners." Rule 16-101 Comm. commentary [6]. Padilla violated Rule 16-101 when he failed to thoroughly prepare for Defendant's trial, resulting in several key legal errors before the district court.

**{22}** Rule 16-103 requires that lawyers "act with reasonable diligence and promptness in representing a client." This means that lawyers must "take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor" and must "act with commitment and dedication to the interests of the client . . . with zeal in advocacy upon the client's behalf." Rule 16-103 Comm. commentary [1]. Padilla violated Rule 16-103 when he failed to investigate evidence crucial to the defense and failed to apprise himself of the substantive and procedural law so that he could properly introduce and move the admission of such evidence, which might have led to an acquittal.

**{23}** We address Padilla's lack of competence and diligence as a failure to apprise himself of the law, a failure to investigate, and a failure to meet the professional standards expected of attorneys in this state.

### 1.    Duty to apprise oneself of the law

**{24}** Attorneys have a duty to apprise themselves of the current state of applicable legal standards pertinent to a given case. "No lawyer should approach any task without knowledge of the applicable statutes, court rules, and case law." *In re Neal*, 2001-NMSC-007, ¶ 21, 130 N.M. 139, 20 P.3d 121. Padilla should have known that Rule 11-410 barred the admission of Defendant's statements in a psychological evaluation prepared for use in plea negotiations. Had Padilla performed a perfunctory review of Rule 11-410 and its related precedent, he would have discovered *State v. Trujillo*, 1980-NMSC-004, 93 N.M. 724, 605 P.2d 232. *See Miera*, 2018-NMCA-020, ¶ 32. The Court in *Trujillo* expressly stated that Rule 410 (the precursor to Rule 11-410) barred impeachment of a witness with statements made in plea negotiations. *See* 1980-NMSC-004, ¶¶ 18-19. This rule is "directly contradictory" to the State's argument at Defendant's trial. *Miera*, 2018-NMCA-020, ¶ 32.

**{25}** Not only did Padilla fail to cite the appropriate case law that would have blocked the State's use of the psychological evaluation for impeachment purposes, he also failed to challenge the State's improper reliance on *Watkins* even after the district court recessed to permit counsel to research the evaluation's admissibility. *Miera*, 2018-NMCA-020, ¶ 9. There are crucial differences between the presentation of evidence in *Watkins* and in Defendant's trial. In *Watkins*, the defendant introduced recorded conversations in his case in chief, conversations which the State later used to impeach the defendant's testimony. 1979-NMCA-003, ¶ 17. The Court of Appeals in *Watkins* concluded that "[h]aving interjected the tapes into the trial for his own purposes, [the] defendant cannot properly complain of the prosecutor's use of the tapes, on cross-examination, to attack the credibility of [the] defendant's trial testimony." *Id.* ¶ 21.

**{26}** In contrast to the defendant's actions in *Watkins*, Defendant did not seek to admit the psychological evaluation in his case in chief. Despite this critical distinction, Padilla conceded that the holding of *Watkins* permitted the State to impeach Defendant with statements made in pursuit of plea negotiations. *Miera*, 2018-NMCA-020, ¶ 9. We agree with the Court of Appeals that Padilla completely failed "to apprise himself of the law governing the use of information gathered during plea negotiations for impeachment," *id.* ¶ 33, in violation of Rule 16-101.

**{27}** Furthermore, the record shows that Padilla had knowledge of the psychological evaluation before trial yet failed to challenge it on Defendant's behalf armed with the applicable law to prevent its admission. Once the evaluation was improperly used to impeach Defendant, Padilla did nothing to limit its impact on the jury, even when prompted to request a limiting instruction by the district court. This demonstrates Padilla's lack of diligence in violation of Rule 16-103.

## 2. Duty to investigate

**{28}** The provision of competent and diligent representation also includes a duty to investigate the factual and legal bases of a client's case or defense. *See In re Reid*, 1993-NMSC-055, ¶ 12, 116 N.M. 38, 859 P.2d 1065. "Courts may find counsel's performance deficient where he fails to investigate a significant issue raised by the

client." *Miera*, 2018-NMCA-020, ¶ 34 (alteration, internal quotation marks, and citation omitted). Padilla lacked competence and diligence when he failed to investigate the allegations underlying the charges against the alleged victim's stepfather and the report compiled by CYFD.

**{29}** Padilla took no action as a result of learning potentially exculpatory information regarding the stepfather's relationship with the alleged victim. A thorough investigation into the case against the stepfather would have revealed the alleged victim's recantation. We agree with the Court of Appeals that Padilla's "fail[ure] to pursue a specific lead given to him by [Defendant] that either suggested [the stepfather] as an alternate perpetrator or called into question [the alleged victim's] credibility" clearly demonstrates Padilla's lack of competence and diligence. *Id.* ¶ 40.

**{30}** Padilla also failed to investigate the circumstances surrounding the abuse documented in the CYFD report. Only during the trial did Padilla discover that the alleged victim had stated that she had never experienced "bad touch." All indications are that Padilla did not even read the complete report prior to trial. Had he done so, he could have called the necessary witness to authenticate the CYFD report and testify to its contents, thereby allowing Padilla to properly introduce the report and move its admission into evidence. His failure to provide such a witness and his failure to thoroughly gather and review evidence prior to trial shows a lack of competence and diligence.

### 3. Public confidence in attorney competence

**{31}** Finally, attorneys must demonstrate to the public that they are "worthy of confidence" in their professionalism, knowledge, and skills. *See In re Quintana*, 1985-NMSC-101, ¶ 8, 103 N.M. 458, 709 P.2d 180. In Defendant's trial for sex crimes against a child, Padilla's elicitation of officer testimony regarding Defendant's sexual desires calls into question whether he has the knowledge and skills required of a competent criminal defense attorney. As the Court of Appeals observed, "one must question the wisdom of pursuing a line of questioning so objectionable that the State intervenes in an attempt to save its case from reversal on appeal." *Miera*, 2018-NMCA-020, ¶ 37. We agree. Padilla's pursuit of this testimony and subsequent failure to move the district court to strike it from the record following the State's sustained objection reveals Padilla's lack of competence.

**{32}** For the foregoing reasons, we conclude that Padilla violated Rules 16-101 and -103 in his representation of Defendant.

### B. Conduct Prejudicial to the Administration of Justice

**{33}** "It is professional misconduct for a lawyer to . . . engage in conduct that is

prejudicial to the administration of justice[.]" Rule 16-804(D). "Lawyers are subject to discipline when they violate . . . the Rules of Professional Conduct." Rule 16-804

Comm. commentary [1]. Padilla violated Rules 16-101 and -103 repeatedly in the course of his substandard representation of Defendant. As a result, the Court of Appeals concluded that Defendant was denied a fair trial. We cannot turn a blind eye to egregious attorney misconduct that rises to such a level as to deprive a client of due process under the law. Therefore, we conclude that Padilla's misconduct was prejudicial to the administration of justice in violation of Rule 16-804(D), and we impose discipline accordingly. "The purpose of attorney discipline is not solely to protect clients from being harmed by their attorneys, but also to protect the profession and the administration of justice." *In re Cox*, 1994-NMSC-054, ¶ 8, 117 N.M. 575, 874 P.2d 783.

## C.      Discipline

**{34}**      Suspension is the appropriate sanction when an attorney repeatedly demonstrates a lack of competence and diligence, resulting in injury to the attorney's client. *See In re Salazar*, 2019-NMSC-010, ¶ 34, 443 P.3d 555; *see also* Am. Bar Ass'n, *Annotated Standards for Imposing Lawyer Sanctions*, Standard 4.42(b) (2015) ("Suspension is generally appropriate when . . . a lawyer engages in a pattern of neglect caus[ing] injury or potential injury to a client."). "While an isolated instance of failure to . . . act diligently, or provide competent representation may not necessarily warrant the filing of formal charges of professional misconduct, a pattern of such behavior that is negligent or unreasonable will not only constitute misconduct but will also result in the imposition of discipline." *In re Romero*, 2001-NMSC-008, ¶ 8, 130 N.M. 190, 22 P.3d 215 (internal quotation marks and citation omitted).

**{35}**      Padilla's recurrent failure to provide Defendant with competent and diligent representation deprived his client of a fair trial. *See Miera*, 2018-NMCA-020, ¶ 1. Accordingly, we indefinitely suspended Padilla for a period of no less than one year, effective August 8, 2019, in accordance with Rule 17-206(A)(3) NMRA. Padilla's suspension is partially deferred as follows. Padilla shall be suspended for six months and must comply with Rule 17-212 NMRA. At the conclusion of his six-month suspension on February 10, 2020, Padilla will be automatically reinstated to supervised probationary status pursuant to Rule 17-206(B)(1) for the remainder of his indefinite suspension period.

**{36}**      This supervised probationary period shall serve as an opportunity for Padilla to mitigate the causes that led to this disciplinary proceeding. To that end, Padilla shall (1) meet with retired judge Hon. Frank Gentry on a regular basis in an effort to improve Padilla's criminal law practice, (2) have cocounsel on all felony cases, (3) maintain adequate support staff, (4) complete fifteen hours of continuing legal education in criminal law and evidence in addition to the five hours of continuing legal education in criminal law recommended by the Board, and (5) undergo a psychological assessment at his own expense.

**{37}**      At the conclusion of Padilla's six-month supervised probationary period, Padilla shall petition for reinstatement in accordance with Rule 17-214(B)(2) NMRA.  This petition shall include Judge Gentry's independent analysis of Padilla's progress during

the course of his supervised probation. The petition must also demonstrate compliance with the conditions of reinstatement enumerated in our order of July 9, 2019, and in this opinion. We encourage Padilla to fastidiously pursue the conditions of his reinstatement as a petition once denied may not again be filed "prior to the expiration of a twelve (12) month period[.]" Rule 17-214(B)(2).

{38}    In modifying the Board's recommended discipline and imposing this partially deferred indefinite suspension, we consider the numerous mitigating factors found by the  Board. We commend Padilla for taking swift action to reimburse Defendant, his former client, for the full amount paid for the representation and to implement measures to improve his practice. We appreciate Padilla's cooperation in these disciplinary proceedings and note his substantial remorse for his misconduct.

## III.    CONCLUSION

{39}    We adopt the Board's findings of fact and conclusions of law in their entirety. We indefinitely suspend Padilla from the practice of law for no less than one year, subject to partial deferment and probationary requirements as set forth in this opinion and in our order of July 9, 2019.

**{40}    IT IS SO ORDERED.**

**BARBARA J. VIGIL, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**